*Litchfield,*
June, 1842.

Wheeler
*v.*
Spencer.

WHEELER *against* SPENCER.

A wager upon the result of a future election, in which the parties are entitled to participate, is illegal at common law

In this state, all wagering contracts are declared void, by statute.

Money deposited with a stake-holder, by a party to a wagering contract, may, while in the hands of such stake-holder, be recovered from him, by the depositor, even after the event has taken place, and that adversely to such depositor.

Therefore, where a wagering contract was entered into between *A* and *B*, entitled to vote in the choice of electors of president of the *United States*, as to the result of the approaching presidential election, and the money staked was paid by each into the hands of *C*, as a stake-holder; the election resulted in favour of *A;* and thereupon *B*, while the money staked was in *C's* hands, demanded of *C* what *B* had paid; it was held, in an action for money had and received, brought by *B* against *C*, that *B* was entitled to recover.

THIS was an action for money had and received by the defendant, to the plaintiff's use.

The cause was tried at *Litchfield, August* term, 1841, before *Sherman*, J.

In *October*, 1840, the plaintiff and *Giles Griswold* 2d, both being then electors of this state and entitled to vote for electors of president and vice-president of the *United States*, having each placed in the hands of the defendant, the sum of 50 dollars, made with each other the following wager respecting the event of the then next presidential election in the *United States :* "If *Wm. H. Harrison* is elected president of the *United States*, said *Spencer* [the defendant] is to pay the 100 dollars to said *Griswold;* but if *Martin Van Buren* is elected, it is to be paid to said *Wheeler.* Said money is to be paid as soon as the presidential election is decided, in *December* 1840; but in case of the death of either the said *Harrison* or the said *Van Buren*, previous to said election, said sums are to be returned to the said *Wheeler* and *Griswold* respectively." At the presidential election, referred to in the wager, *Wm. H. Harrison* was elected president of the *United States*. On the 15th of *December* 1840, after that event, while the sums so deposited remained in the defendant's hands, the plaintiff forbade the defendant to pay over to said *Griswold* the sum deposited by him, the plaintiff, and demanded it himself from the defendant. With this demand the defendant

refused compliance; and thereupon the present action was brought.

Upon these facts the court decided, that the plaintiff was entitled to recover the sum of 50 dollars, with interest and costs. The defendant thereupon moved for a new trial.

*Church* and *Brewster*, in support of the motion, contended, 1. That the contract, by means of which the defendant received the plaintiff's money, was illegal and void. *Stat.* 305. *tit.* 41. *s.* 1. *Gilbert* v. *Sykes*, 16 *East*, 150.

2. That the plaintiff being a *particeps criminis* with the defendant in this transaction, cannot sustain an action for the recovery of the money. As both parties are actors in the same illegal transaction, the law will leave them where it finds them. They are *in pari delicto*; and in such case, the maxim is *potior est conditio possidentis—i. e.* he who has got the money, is the best off, because the law will not help another rogue to get it away from him. The courts, especially of late years, refuse even to *try* a cause founded on a wager. *Egerton* v. *Furzman, Ry. & Moo.* 213. *Kennedy* v. *Gad,* 1 *Moo. & Mal.* 225. This is the true course: it is sanctioned by sound policy, and best comports with the dignity of the law. The question in this case has been settled, by the highest court in the state of *New-York,* against the claim of the plaintiff. *Yates* v. *Foot,* 12 *Johns. Rep.* 1.

*Woodruff,* contra, insisted, That the plaintiff, both upon principle and authority, was entitled, in this case, to recover the deposite.

1. Upon principle. The money being paid upon a contract void by statute and at common law, it was received by the defendant without consideration; and of course, the party paying it may recover it back in this action.

2. The authorities (with the single exception of the case of *Yates* v. *Foot,* decided by the *New-York* court of errors against the opinion of the supreme court,) declare, that money deposited on a wager with a stake-holder, may, while in his hands, be recovered from him, after the event, by the party who deposited it. 1 *Sw. Dig.* 412. *Cotton* v. *Thurland,* 5 *Term Rep.* 405. *Lacaussade* v. *White,* 7 *Term Rep.* 535. *Vischer* v. *Yates,* 11 *Johns. Rep.* 23. *Smith* v. *Bickmore,* 4

*Taun.* 474.    *Bate* v. *Cartwright,* 7 *Price* 540.    *Hastelow* v. *Jackson,* 8 *B. & Cres.* 221.    Though the case of *Vischer* v. *Yates* was reversed, by the court of errors, the law, as laid down by the supreme court, was soon afterwards recognized and established, by the legislature.    1 *Rev. Stat.* 662. *c.* 20. *art.* 3. *s.* 9.

3. The *policy* of the law favours a recovery by the plaintiff. Though the law will not interpose after the money is paid over to the winner, yet before this is done, the *locus pœnitentiæ* must be allowed the depositor, that he may disaffirm the contract.    To take from him this remedy, would be virtually giving effect to the illegal contract.

HINMAN, J.    No question has ever been directly raised, in this state, as to the validity of wagers at common law.    The general understanding of the profession, however, has been, that they would be held to be illegal, as being contrary to the principles of morality and against sound policy.    But in *England*, where the courts have gone so far in sustaining wagering contracts, as to subject the law to the reproval of descending from its dignity, in lending its aid to recover idle and frivolous wagers, it has been held, that a wager between two voters, on the event of an election then pending, was illegal; and no action would lie, by the winner, to recover the bet; and it was said, by Lord *Mansfield*, in *Allen* v. *Hearn*, 1 *T. R.* 56. 59, 60.    "It is laying them under a pecuniary influence; it is making each of them in the nature of a candidate.    If this be allowed, every other wager may be allowed.    What is so easy, where a bribe is intended, as to lay a wager?    It is a colour for bribery; and is, therefore, void."

The same doctrine has been held in *New-York*.    *Bunn* v. *Riker*, 4 *Johns. Rep.* 426.    And by the 1st *sect.* of our statute to prevent gaming, (*ed.* 1838, *p.* 305.) it is enacted, "that all contracts and securities, made and entered into, by any person or persons whatever, where the whole or any part of the consideration of such contract or security shall be for money, or other valuable things whatsoever, won, laid, or betted at cards, dice, tables, tennis, bowls, or any other game or games whatsoever; or at any horse-race, or other sport or pastime, or any *wager whatsoever;* or for reimbursing or re-

*Litchfield,*
June, 1842.

Wheeler
*v.*
Spencer.

paying any money, knowingly lent or advanced, at the time and place of such play, horse-racing, or other sport or pastime, to any person or persons so gaming, betting or *wagering,* or that shall, at such time and place, so play, bet or *wager,* shall be utterly void."

The wager, therefore, in the present case, is not only illegal and .void at common law, but all gaming and wagering contracts are void, by our statute.

But it is not denied, that the wager laid in this case, was an illegal transaction. On the contrary, it is claimed, by the defendant, and insisted upon, by him, that it is of so illegal and immoral a character, that courts ought not to entertain suits upon it.

Without intimating that this stake-holder's present regard for good morals is at all influenced by the fact that he has the money of the betting parties in his hands, it is a sufficient answer to this claim, that with a solitary exception, it is believed the cases are all the other way. In the case of *Cotton* v. *Thurland,* 5 *T. R.* 405. it was held, that money may be recovered back from the hands of a stake-holder, even after the event of the wager is decided, if it has not been paid over to the winner. The same doctrine was recognised in *Lacaussade* v. *White,* 7 *T. R.* 535. *Farmer* v. *Russell* & al. 1 *Bos. & Pul.* 296. *Bate* v. *Cartwright,* 7 *Price* 540. and *Hastelow* v. *Jackson,* 8 *B. & Cres.* 221. In the latter case, where the stake-holder had paid the money over to the winner, after notice not to do so, *Bayley,* J. says: "It has been urged, that a decision for the plaintiff, would go beyond all former cases; for that the money has been paid over before the action was brought, and the plaintiff had done no act to rescind the wager, nor had ever intimated that he claimed his own money, and that only. But if a stake-holder pays over money, without authority from the party, and in opposition to his desire, he does so at his own peril."

And in the supreme court of *New-York,* in the case of *Vischer* v. *Yates,* 11 *Johns. Rep.* 23, the doctrine of the *English* cases on this subject, was fully sustained and ably vindicated, upon principle; and though this case was overruled, (*Yates* v. *Foot,* 12 *Johns. Rep.* 1.) yet no authority was cited, nor can any be found, to sustain the decision of the court of errors. And it is not, perhaps, unworthy of notice,

that the legislature of *New-York*, soon after, interfered, and re-enacted the common law, as it was held to be, by their supreme court.   1 *Rev. Stat. N. Y. p.* 662.

The doctrine to be extracted from all the cases, is this ; that money received by a third person, not a party to an illegal transaction, may be recovered back, before it is paid over, as money had and received to the plaintiff's use ; and that where an illegal wager has been laid, either party may notify the stake-holder not to pay it over to the winner, and recover back the amount of his stake ; and it is wholly immaterial, whether the event upon which the money was staked, has or has not happened, when the party chooses to recall it.

Upon the agreed facts, therefore, the plaintiff in this case is entitled to recover ; and no new trial should be granted.

In this opinion the other Judges concurred.

New trial not to be granted