Hale *v.* Sherwood.

---

## ALMARIN R. HALE *vs.* RICHMOND SHERWOOD.

Where money is deposited with a stake-holder upon an illegal wager, it may be recovered back by the party depositing it, upon a notice given to the stakeholder, while the money is in his hands, not to pay it over to the winning party.

And where each of two parties who had made such deposits claimed to have won, and therefore to be entitled to the whole amount deposited, and one of them demanded of the stakeholder the whole sum as due him and notified him not to pay it to the other party, it was held that his right of recovery was not defeated by the fact that his demand covered the whole amount in the stakeholder's hands, and was made in affirmance and not in repudiation of the wager. [One judge dissenting.]

ASSUMPSIT for money received by the defendants to the plaintiff's use; brought to the Court of Common Pleas of Fairfield County and tried to the jury on the general issue, with notice, before *Brewster, J.*

The notice was that the defendant held the money as a stakeholder upon a bet at a race between a horse of the plaintiff and a horse of one Howe; that a dispute having arisen as to which of them won it was submitted by the plaintiff

and Howe to an arbitrator, who awarded in favor of Howe, and that he had thereupon paid the money over to Howe before the plaintiff had repented or sought to escape from his bet, and before he had given any notice or made any demand on him for the money.

On the trial the plaintiff claimed to recover of the defendant the sum of two hundred and 'fifty dollars, with interest, which sum it was admitted had been deposited by the plaintiff in the hands of the defendant as a stakeholder, as stated by the defendant in his notice, in a race which took place at Bridgeport, in October, 1870, between a horse of the plaintiff and the horse of one Simon A. Howe. The wager on which the money was staked was made by the plaintiff and Howe, each putting in the hands of the defendant as stakeholder the sum of two hundred and fifty dollars, and the one whose horse won three out of the five heats to be trotted, was to receive from the stakeholder the whole amount deposited with him. The horse of the plaintiff won the first two heats, and when the horses started for the third heat, after the word had been given by one of the three judges of the race to " go," a bell was rung by another of the judges, the ringing of which was a signal to return, and the horse of the plaintiff thereupon returned, but Howe's horse continued alone around the course; and Howe thereupon demanded the money of the stakeholder, on the ground that his horse had " distanced " the horse of the plaintiff—it being a rule of the race-course that when one horse distances another, that is, comes in a certain considerable distance ahead, he has won what is equivalent to three heats. The stakeholder refused to pay the money at that time to Howe, and the judges ordered that the horses should trot over the third heat; but Howe refused to allow his horse to be again brought up, and the plaintiff's horse, when the signal to " go" was given, went around the course alone, and the judges decided the race in the plaintiff's favor.

It further appeared that, on the termination of the race, and on several occasions during the month following, the plaintiff demanded of the defendant the money deposited

with him, and forbade him to pay it over to Howe; but he did not demand merely the $250 placed by him in the hands of the defendant, but demanded the whole stake of $500; nor did the plaintiff inform the defendant that he repented of his bet, or that he rescinded the wager, but at all times until suit brought claimed that the whole wager belonged to him by racing rules.

The plaintiff also offered evidence to prove, and claimed to have proved, that he at various times threatened to sue the defendant if he paid the money to Howe, and there was no evidence to the contrary.

The defendant before suit brought paid the $500 to Howe, receiving a bond of indemnity.

Upon these facts the defendant claimed, and asked the court to charge the jury, that the law was so that the plaintiff could not recover; that in order to succeed he must prove that he rescinded the wager, and demanded, not the whole stakes, but only that portion contributed by himself, before payment by the defendant to the other party as the winner, or at least gave notice specifically to the stakeholder not to pay over the amount contributed by him; that the demands made and notices given were insufficient, since in none of them did the plaintiff rescind or attempt to rescind the wager, but in all of them always affirmed it, and claimed the whole stake as due to him by its terms, and upon no other grounds at any time before suit.

The court did not so charge, but charged on the question of notice as follows:

1. That an actual payment by the stakeholder is valid, if made to the winner before notice.

2. That a notice not to pay operates as a countermand of the authority implied by the original deposit, and renders a subsequent payment wrongful as against the party by whom the notice is given. That the position of the stakeholder is that of agent or bailee, who will be liable generally if he attempts to carry out a transaction which is void as a contract and has been revoked as an authority.

3. That if demand is made by a depositor of the stakes as a winner, and of all the stakes, with no repudiation or revo-

cation of the stakeholder's authority as a stakeholder, he has no remedy if payment is made to the other party in good faith by the stakeholder. That if a party to a wager all the while assumes that the wager is still a wager, and confirms the authority of the stakeholder, and merely claims that he has won and is entitled to the stakes as a winner, that is not a revocation in law. But if in addition to demanding all the money, the depositor or wagerer expressly forbids the payment to the other party of the money, and threatens to sue the stakeholder if he pays the other party, and the payment is made after he is so forbidden and threatened, the stakeholder is liable, unless from other facts the jury find the revocation of authority waived or repudiated, and consent to pay over given.

Evidence was introduced by both parties upon the question of a submission having been made of the matter in dispute between the plaintiff and Howe to the editor of the racing department of the *Spirit of the Times*, and of an award thereupon in favor of Howe; the defendant claiming that such submission had been made and the plaintiff denying the same. But no question of law arising upon this part of the case, a statement of it is omitted. The defendant claimed that in paying over the whole amount in his hands to Howe, he did so upon and in accordance with the award. and that he was justified by it in so doing.

The defendant also claimed, and requested the court to charge the jury, that if the wager was an illegal contract, the plaintiff's claim against the stakeholder rested upon it, or at least derived aid from it and could not be sustained without proof of it, and that therefore the plaintiff could not recover; but the court refused so to charge.

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial for error in the charge of the court and in the refusal to charge as requested.

*Sanford*, in support of the motion, cited *Good* v. *Elliott*, 3 T. R., 693; *Bunn* v. *Riker*, 4 Johns., 426; *Yates* v. *Foot*, 12 id., 1; *Morgan* v. *Groff*, 5 Denio. 364: *Like* v. *Thompson*, 9 Barb., 315.

*G. Stoddard* and *Hall*, contra, cited *Wheeler* v. *Spencer*, 15 Conn., 28; *Hastelow* v. *Jackson*, 8 Barn. & Cress., 221; 2 Smith Lead. Cas., (*H. & W.* ed.,) 345.

FOSTER, J. The courts of this state have very seldom been called on to enforce claims of parties directly or remotely connected with wagering contracts. Such contracts are considered contrary to the principles of morality and against sound policy. Perhaps the only case to be found in our reports on this subject is that of *Wheeler* v. *Spencer*, 15 Conn., 28. There, as here, the plaintiff sought to recover from the defendant an amount of money deposited with him as a stake-holder. Judge HINMAN, who gave the opinion of the court, after considering the questions involved, came to the following conclusion, (p. 32:) "The doctrine to be extracted from all the cases is this; that money received by a third person, not a party to an illegal transaction, may be recovered back before it is paid over, as money had and received to the plaintiff's use; and that where an illegal wager has been laid, either party may notify the stake-holder not to pay it over to the winner, and recover back the amount of his stake, and it is wholly immaterial whether the event upon which the money was staked has or has not happened when the party chooses to recall it."

In the present case each party claimed that he had won the wager, a bet on a horse race, and each party claimed that the stake-holder should pay over to him the full amount deposited in his hands. The plaintiff made such demand of the stake-holder, and forbade his paying over the money to the other party, while he still retained it in possession. Previously to bringing the suit the defendant had paid over the money to the other claimant, taking from him a bond of indemnity.

The instruction given by the court below as to the law on these facts we think was correct. The point here insisted on by the defendant is, that though the plaintiff forbade the defendant from paying over the money, and avowed his purpose to bring a suit to recover it should such payment be made, still he demanded of the defendant the payment of the whole sum deposited with him. This precise question, it

is true, did not arise in the case of *Wheeler* v. *Spencer*, but the principle recognized in that case we think decides it.   Forbidding the stake-holder to pay over the money while it was still in his hands, terminated and revoked his previous authority to do so.   That the plaintiff demanded a greater sum than he had deposited, we think is not a reason why he should not be entitled to the sum he actually did deposit.   In the case of *Hastelow* v. *Jackson*, 8 Barn. & Cross., 221, (15 E. C. L., 204,) Bayley, J., says :—"It has been urged that the money has been paid over before the action was brought, and the plaintiff had done no act to rescind the wager, nor had even intimated that he claimed his own money, and that only.   But if a stake-holder pays over money without authority from the party, and in opposition to his desire, he does so at his own peril.   *   *   *   And the defendant, having paid over the whole after the plaintiff's prohibition, which was valid as to a moiety of the stakes, paid over that moiety wrongfully, and is liable to refund it to the present plaintiff." This case is quoted as an authority by this court in the case of *Wheeler* v. *Spencer.*

Some other questions appear upon this record, but they are rather questions of fact than of law.   We perceive no question of law, on which the court was requested to charge, where the charge was erroneous.   As the matter stands, each party will have the money originally deposited by him in the hands of the stake-holder, less the amount of fees and expenses to which he has been subjected.   Should betting, and all other forms of gambling, always prove unprofitable, as they are always immoral, it would be no cause of regret.   A new trial is not advised.

In this opinion the other judges concurred; except PARK, J., who dissented.

PARK, J.   This case hinges upon the following facts stated in the motion for a new trial :

" It appeared that on the termination of the race, and on several occasions during the month following, the plaintiff

demanded of the defendant the money deposited with him, and forbade him to pay it over to Howe, but did not demand merely the $250 placed by him in the hands of the defendant, but demanded the whole stake of $500; nor did the plaintiff inform the defendant that he repented of his bet, or that he rescinded the wager, but at all times until suit brought claimed that the whole wager belonged to him by racing rules. The plaintiff also offered evidence to prove, and claimed to have proved, that he at various times threatened to sue the defendant, if he paid the money to Howe, and there was no evidence to the contrary."

The court charged the jury as follows upon the question raised by these facts:

"That if demand is made by a depositor of the stakes as a winner, and of all the stakes with no repudiation or revocation of the stakeholder's authority as a stakeholder, he has no remedy if payment is made to the other party in good faith by the stakeholder. That if a party to a wager all the while assumes that the wager is still a wager, and confirms the authority of the stakeholder, and merely claims that he has won and is entitled to the stakes as a winner, that is not a revocation in law. But if in addition to demanding all the money, the depositor or wagerer expressly forbids the payment to the other party of the money, and threatens to sue the stakeholder if he pays the other party, and the payment is made after he is so forbidden and threatened, the stakeholder is liable, unless from other facts the jury find the revocation of authority waived or repudiated, and consent to pay over given."

The last part of this charge seems to me to be erroneous. The plaintiff claimed that the whole sum wagered belonged to him by racing rules, and demanded the same of the defendant as his own property, and persisted in the claim at all times up to the bringing of the suit. It is true that he forbade the defendant to pay the stakes to his adversary in the race, and at various times threatened to sue him if he did so. But this must be considered in connection with his own claim and demand made at the same time. It was while he was claim-

ing the entire wager as his own, and was persisting in the claim, that the prohibition was made, and suit threatened. He said to the defendant in effect, " The stakes are mine by wagering rules ; if you pay them, or any portion of them, to Howe, you pay him my money ; I forbid you to do it, and shall sue you if you do, because the money is mine." Surely the threats and prohibition are in perfect accord with his demand, and were made to give force and emphasis to what he said, and show that he was exceedingly in earnest in maintaining his rights as he viewed them.

There is no intimation here of an intention to withdraw from the wager, but on the contrary a determination to stand by it, for the prohibition applies as much to the sum staked by Howe as to that staked by himself, and the threat applies as much to the payment of the one sum as to that of the other. Indeed the plaintiff claimed no right to the money staked by Howe, except on the ground that he himself was the winner of the race ; and hence his persistency that the defendant should pay it to him in accordance with the authority conferred upon the defendant by Howe, when the money was deposited, to pay it to the winner. He considered Howe as not having revoked that authority any more than he had himself, but as bound by his contract ; and hence his claim continued to be made until after the suit was brought, when doubtless he was informed for the first time that the illegality of his contract would prevent his recovery of anything more than the money deposited by him. Up to that time his declarations and conduct were just what they would have been if the wagering contract had been legal and could have been enforced. He therefore never intended his threats and prohibition as a revocation of the authority conferred by him upon the defendant to pay his money to Howe, if it should be made to appear that Howe was the winner of the race instead of himself ; and he would have regarded it as an insult if any one had so suggested. How could he have so intended ? He knew that by so doing he would be abandoning the money of Howe, but instead of that, we find him as determined to obtain that money as he was to get his own, and he brought

his suit to recover it, and only gave up at last, when he found the illegality of his contract to be an insuperable difficulty. It is clear to me that all that the plaintiff intended by his threats and prohibition, was to enforce the claim that he was making, that he was the winner of the race and entitled to the whole money; and hence the construction that the court put upon his declarations I think was wrong. At all events, if there was any doubt respecting the matter, the court should have left the question to the jury to determine as a matter of fact, whether the plaintiff by his threats and prohibition under the circumstances intended to revoke the authority originally conferred upon the defendant to pay the money to his adversary, if he should be the winner of the race. It will not be claimed that the plaintiff can recover unless they had that effect, for there is nothing else in the case tending to show that the authority was ever revoked, and without its revocation before the money was paid over, all the authorities are against a recovery. But instead of leaving the question to the jury to determine, the court charged the jury as matter of law, that if the plaintiff, in addition to demanding the entire stakes, forbade the defendant to pay the same to Howe, and threatened to sue him if he did so, he thereby revoked the original authority conferred upon him, and rendered him liable to the plaintiff, unless the revocation was subsequently waived or repudiated. Under this charge there was nothing for the jury to find; for it was not denied that the plaintiff had threatened a suit, and had forbidden the payment of the stakes to Howe, while making his own demand for the money. The court, therefore in effect, decided the whole case as a matter of law.

It cannot be said that this part of the charge is qualified by that which precedes it. The charge is divided into three parts. The jury are informed, in the first part, that a plaintiff would be remediless, if he claims the whole stakes and does not revoke the authority of the stakeholder. But no instruction is given as to what would be, or what would not be, a revocation. In the second part of the charge the jury are told of what would not be a revocation, to wit: that "if

a party merely claims that he has won and is entitled to the stakes as a winner," he would not thereby revoke the authority. Much stress is laid upon the expression, "merely claims that he has won;" that is, if a party is satisfied with insisting that the stakes are his as a winner in the contest, and his excitement does not lead him to threaten legal proceedings, then there is no revocation. The third and last part of the charge has already been considered. In that the court expressly states what would be a revocation; that threats to sue, and a prohibition to pay, would have that effect. So it appears that the first parts of the charge do not explain or qualify the last part, but leave it by itself to abide the test of legal criticism, as best it may, upon its own merits.

This part of the charge was doubtless based upon the authority of the case of *Hastelow* v. *Jackson*, 8 Barn. & Cress., 221. The facts of that case are not fully stated. It appears that the plaintiff and one Wilcoxon deposited the sum of $202 each, in the hands of the defendant, to abide the event of a boxing match between them. The battle was fought, and a dispute arose as to which of the parties was the winner. The question was left to two referees and an umpire to determine, and they decided in favor of Wilcoxon. Notwithstanding the decision the plaintiff claimed all the stakes, and threatened the defendant with a suit if he paid over the money to Wilcoxon. The money was paid over, and a suit was brought for the amount the plaintiff had deposited with the defendant. Upon the trial the defendant claimed, as matter of law, that the plaintiff could not recover on the ground that he had never given notice of an intention to rescind the illegal wager, but on the contrary had affirmed it by claiming the whole stakes and insisting that he was the winner of the contest. The learned judge overruled the claim of the defendant, and the plaintiff had a verdict. It does not appear how the court charged the jury, but the question was undoubtedly left to them as a question of fact, whether the plaintiff revoked the authority originally conferred upon the defendant to pay the money to the winning party; for otherwise there would have been nothing for the jury to pass upon, and the court would have

directed them to return a verdict in favor of the plaintiff, as the English courts were accustomed to do in such cases. The decision upon the claim made by the defendant was doubtless correct, for the question was not one of law but one of fact, and the court of King's Bench sustained the ruling of the court below. It is true that the court in reviewing the case consider, to some extent, the question of fact. The court say, "Here, it is true, the whole was demanded; the defendant said he should pay it to the other party; the plaintiff desired him not to do so, and threatened him with an action. That was a plain expression of dissent."

The facts of that case are materially different from those of the present one. It is difficult to see how the plaintiff, without nullifying the wagering contract, could have claimed any portion of the stakes, after the question involving his right to the money under the wager had been left to referees to determine, and a decision had been made against him. His claim was inconsistent with the continuance of the wagering contract, or the authority of the stakeholder to pay the money to the winning party, and would seem to be an abrogation of both. But here the decision of the judges of the race was in the plaintiff's favor, and his claim and demand, his threats and prohibition, are all in harmony therefore with the wagering contract, and with the continuance of the stakeholder's original authority, and appear to be a confirmation of both.

The court in *Hastelow* v. *Jackson* seem to take it for granted that a demand of the whole stakes was, under the circumstances, a demand in effect of only the sum deposited by the plaintiff; and they treat the case accordingly. It is well known that the English courts are accustomed to pursue a similar course where the facts are not in dispute, without intending to be understood as treating the question as one of law. But if in that case the court holds that in a case like the one under consideration, the question whether the plaintiff revoked the authority conferred upon the defendant to pay the stakes to the winner of the race, is one of law, and not one of fact, then I insist that the case in this respect

is not in accordance with law, and should not be considered an authority.

But it is said that our own court, in the case of *Wheeler* v. *Spencer*, 15 Conn., 28, speaks approvingly of this case and refers to it as authority. But the question in *Wheeler* v. *Spencer* was whether an action could be maintained against a stakeholder under any circumstances, even when the money of the plaintiff had been demanded while in his hands, after the wagering contract had been expressly rescinded. This was a grave question in *Hastelow* v. *Jackson*, but the court decided that an action would lie, and the court in *Wheeler* v. *Spencer* refers to the case as authority upon that question only.

I am of the opinion that the court erred in its charge to the jury, and that a new trial should be advised.