[No. 3339.]

## COUNTY COMMISSIONERS OF EL PASO COUNTY v. FLANAGAN.

1. STATUTE OF LIMITATIONS—*Presentation of Claim to County Commissioners—Effect.* The presentation to the County Commis-

sioners, of a claim against the county, and diligent and active effort by the claimant to induce action by the board, stays the course of the general statute of limitations. Corning v. Ryan, 3 Colo. 525, Morris v. Clark, 10 Colo. 216, Altvater v. Bank, 45 Colo. 528, distinguished.

2. —— *Waiver of Statute.* One who by his conduct induces a creditor to believe that no action will be necessary to enforce payment of the demand, until the statute has completed its course, will not be heard to plead the statute against an action subsequently commenced.

3. COUNTIES—*Claims Against—Presentation—Duty of County Commissioners.* It is the duty of the Board of County Commissioners to consider and allow or reject every claim presented to them, within a reasonable time.

4. —— *Action of Board of Commissioners—Effect.* The great weight of authority is that such boards act in a judicial capacity, and their allowance or rejection of a claim has the effect of a judgment, unless vacated or reversed in the manner prescribed by law.

5. INTEREST—*Is a Creature of Statute,* and is not to be allowed upon an unliquidated claim.

6. ACTIONS—*Defenses—Relation of Defendant to Third Person.* One employed by a county to construct a road, which is the property of a private corporation, is not affected by the relations of trust existing between the county and such corporation.

*Appeal from El Paso District Court.* HON. JAMES OWEN, Judge.

Mr. R. L. HOLLAND, for appellant.

Mr. NORMAN M. CAMPBELL, for appellee.

HURLBUT, J.

This action was brought March 12, 1907, by appellee (plaintiff below) against appellant (defendant below) to recover a judgment against defendant for work and labor performed, services rendered, and tools and supplies furnished in building a wagon road in El Paso county in 1872. The Ute Pass Wagon Road Company, a domestic corporation, was im-

pleaded with the board of commissioners, but it seems that the Wagon Road Company has been ignored from the very first by both plaintiff and defendant. The case was tried to the court without a jury and judgment rendered in favor of plaintiff against the board of commissioners. Both parties seem to have been dissatisfied with the judgment. Appellee has assigned cross errors. The evidence and proofs, as shown by the record, can be fairly said to establish the following facts, viz:

In 1872 the Ute Pass Wagon Road Company, a corporation, and the county of El Paso, entered into negotiations whereby the county undertook to assist the Wagon Road Company in building the road. A proposition was submitted to the people, by the commissioners, to purchase capital stock of the Wagon Road Company to the amount of $15,000.00, and issue bonds therefor. The proposition was voted upon affirmatively by the electors and the bonds were issued. One Colton filed a bid to construct the wagon road for $15,000.00, and his bid was accepted by the Wagon Road Company, after which that company appears to have faded from memory, and the county, through its commissioners, at once assumed the active management and construction of the road. It soon became apparent that the bid was too low, and the contractor would not be able to complete the road under his bid. He continued for some time in its construction and then ceased operations, whereupon the commissioners employed plaintiff to complete the construction of the road, and agreed to pay him therefor. The plaintiff completed the road to the satisfaction of the commissioners and their engineer. The commissioners, however, failed to pay

him anything on account of the services rendered. Shortly after the completion of the road plaintiff filed his claim against the county with the commissioners.

There is scarcely any conflict in the evidence. However, all issues of fact were resolved in favor of the plaintiff, and we are bound by the findings of the trial court to the same extent as though the facts had been passed upon by a jury.

At the trial we think some evidence was admitted which should have been excluded, but at the same time we are satisfied that the evidence and proof which were properly admitted amply support the findings and judgment of the trial court.

The determination of but one proposition presented by the record will be decisive of the rights of the respective parties to this appeal, and in our judgment it will not be necessary to discuss at length any other issues argued in the briefs. This proposition is presented by appellant's tenth assignment of error, which challenges the ruling of the trial court in holding that the claim was not barred by the statute of limitations.

We are called upon to decide whether or not the filing of a claim against the county with the board of county commissioners, followed up by reasonable diligence on the part of claimant to have the claim considered and acted upon by the board will arrest the running of the general statute of limitations until the board had allowed or rejected the claim. In passing upon this question we can derive no assistance from our own appellate courts, as our attention has not been called to any decision bearing upon the proposition, and we know of none. How-

ever, the appellate courts of many other states have decided various phases of the question, and we find some conflict in the conclusions reached by them, though the great weight of authority seems to establish the doctrine that the filing of such claim with the commissioners arrests the running of the general statute of limitations against the claim. In the case of *Marsh v. Commissioners*, 42 Wis. 355, the claimant filed his account against the county for money paid on void tax certificates. The county pleaded the defense of the six years statute of limitations. The court held that the presentation of the claim to the commissioners was equivalent to the beginning of an action, the court saying: "But, by the presentation of the claim in 1873, an action on the certificates was really commenced, and what was done in 1874 was a continuation of that proceeding." In *Cox v. State*, 144 N. Y. 396, the claimant filed an account against the state with a body specially created by the legislature to consider the same. The board discussed the claim but the same was "laid upon the table," where it remained for about sixteen years, after which period claimant again pressed his demand for payment, before another board subsequently created by the legislature, which succeeded to the duty imposed upon the first board of considering the claim. The statute of limitations was pleaded by the state. The court says: "The jurisdiction to examine and report was not lost by failure to comply with the direction. The power conferred imposed a duty which rested upon them until performed. * * * Thus it appears that within a year after the claim accrued it was presented to the tribunal constituted by the state to

hear and examine into its merits. This was equivalent to the commencement of an action between citizens, which suspended the operation of the statute of limitations upon the claim, and unless something occurred afterwards to set the statute running the cause of action is not barred.''

In *County v. Stuart, Buchanan & Co.*, 28 Grattan (Va.) 526, plaintiff presented to the county board, and attempted to have filed, his claim against the county, within the statutory period. The commissioners refused to permit the claim to be filed, or to take any action thereon, and adjourned. A short time after the board had adjourned plaintiff again presented his claim to the county for allowance and payment, but at this time the statute of limitations had run against the claim. Upon suit brought the county pleaded the statute of limitations, but the court would not permit it to invoke the benefit thereof, saying: ''This order is the foundation of a valid claim against the county of Dinwiddie, if the same was presented within the period of the statute of limitations. In a case resting upon a claim to be settled by the board of supervisors it must be conceded that the time of the commencement of the action is the date of the presentation of the claim before the board.''

We could cite other authorities holding to the rule adopted by Wisconsin, New York and Virginia, but deem it unnecessary to extend the list.

It seems to be the well established rule in all jurisdictions that the commencement of an action within the statutory period to enforce a claim or demand arrests the running of the general statute of limitations against the same. Appellant's coun-

sel contends against the doctrine announced in the above cited cases, and cites in support of his contention two cases in our supreme court: *Corning v. Ryan,* 3 Colo. 525; *Morris v. Clark,* 10 Colo. 216. We might add the case of *Altvater v. Bank,* 45 Colo. 528. In examining these cases, we find they are based upon claims filed in the probate court, against estates. But none of the cases goes further than to hold that the *mere filing* of a claim against an estate does not arrest the running of the general statute of limitations against the claim. However, we notice one significant phrase used by the court in *Morris v. Clark, supra,* to-wit: "The filing of a claim, which must be regarded as the commencement of a suit, was not within the two years limit fixed by the statute." It would not be profitable to speculate on what the ruling of the supreme court might be where the statute of limitations was pleaded by an estate at the trial, in a case where the claim was filed in the probate court against the estate within the statutory period and *reasonable diligence was used* by the claimant to bring the matter to trial, but, before hearing, the bar of the statute had intervened. Such a situation would be another question for consideration by the court. In the case at bar we do not feel called upon to decide as an inflexible rule of law that the *mere filing* of a claim against a county with the board of county commissioners arrests the running of the general statute of limitations against the claim, and we do not so hold. What we do decide is, that where a claim against a county is filed with the board within the statutory period, the board, in an action upon the claim after the bar has attached, will not be permitted to invoke the

aid of the statute of limitations, where it appears
that after the claim was filed, the claimant prose-
cuted the same with reasonable diligence, and made
constant effort to have the commissioners consider
the claim on its merits, and either approve or dis-
approve the same. In such a case the running of
the general statute of limitations will be arrested
until the board has either allowed or rejected the
claim. It satisfactorily appears here, from the rec-
ord, that from the time the claim was filed with the
board in 1872 until it was rejected on March 4, 1907,
the plaintiff had persistently and constantly pressed
his demand upon the attention of the commissioners,
both in board meetings and in vacation, and had
earnestly insisted that they adjust and pay his claim.
The claim seems to have been ever present before
the board, and in no sense could it be designated
as a stale or dormant claim. It further appears that
during this period the board had repeatedly and con-
stantly considered plaintiff's claim, and had dis-
cussed the same time and again with plaintiff and
other citizens of the county; had never at any time
disputed the claim or the justness of the demand;
had repeatedly stated to plaintiff and others that
the reason the claim was not allowed and paid was
because of the lack of funds; that when the road
bonds were sold the claim would be paid; that the
claim was as good as the bank and would be paid,
and other statements of similar import. In fact the
board, while in session as well as in vacation, ap-
peared ready and willing at all times to talk to plain-
tiff about his claim, but evinced a disposition to
avoid a frank consideration of the same on its mer-
its. This action of the board in these respects, con-

sidered in connection with the character of conversations had with plaintiff, would certainly justify him in the belief he entertained that his claim would eventually be paid and that no action thereon was necessary. It can be well said that it had a tendency to lull him into a feeling of security and generate a hope that he would ultimately secure a settlement and payment of his claim through the commissioners without legal proceedings.

In this connection we may say that under our view of the evidence the charge of *laches* against plaintiff cannot be sustained, unless it can be said that the *laches* consisted in his failure to commence an action on the claim, after waiting a reasonable time for the board to act thereon. This contention, however, can be met by a defense which seems to be well recognized and supported by the authorities. It is clearly stated in 25 Cyc. 1325; viz: ''A plaintiff may meet the defense of the statute of limitations by showing that, before the time fixed by statute for the bar, defendant, by his course of conduct, led plaintiff to believe that a suit to enforce his rights would be unnecessary, and thereby lulled him into a feeling of security.'' The text is supported by many credible authorities. Upon this phase of the case, and in the light of the evidence concerning the actions of the board toward plaintiff, we hold that the statute of limitations is not available to that body for the purpose of defeating plaintiff's action.

Appellant's counsel say that, at any time prior to 1887, appellee could have brought suit against the county upon his claim, without first having made a demand upon the county for payment. It is not necessary to decide that question, but, if it were, the

negative of counsel's proposition is supported by strong and well reasoned cases in other states. The supreme court of North Carolina in the case of *Alexander v. Commissioners,* 67 N. C. 330, held that a previous demand was necessary to sustain an action against a county upon a claim asserted against it, and supported the opinion with persuasive and convincing reasoning. Whatever the law might be as to this question, it might be said in answer to counsel's suggestion that, at any board meeting, the commissioners could have set the statute in motion by allowing or rejecting the claim. Plaintiff, by any action of his, could not have compelled the county commissioners to formally consider and pass on his claim. But the commissioners, having original jurisdiction to consider and determine the claim, and if necessary swear witnesses concerning its validity, could, at any time during their sessions, have allowed or rejected the claim, without any previous notice to plaintiff. It was the duty of the commissioners within a reasonable time to have considered the claim and either allowed or rejected it. If, after the claim was filed, plaintiff had taken no steps towards prosecuting it to a hearing and action before the board, and the commissioners had said or done nothing concerning the claim, and the claim had consequently lain dormant for years, then the application of the statute of limitations to such a situation would have raised a different question for consideration than the one presented by this record. The great weight of authority in this country holds that, in passing upon claims urged against a county, the board of commissioners act judicially, or at least in a *quasi* judicial capacity, and their allowance and

settlement have the force of judgments and are binding unless reversed or vacated in a manner provided by law. 11 Cyc. 595. A full and rather exhaustive discussion sustaining the proposition may be found in *Brown v. Otoe County*, 6 Neb. 115.

A number of other matters are discussed in the briefs and show painstaking research by counsel on both sides, but we are unable to discover from the record any proceeding upon which could be predicated fatal or reversible error. Much space in the briefs has been consumed in debating the question of trust relationship between defendant and the Wagon Road Company. We are unable to see that this question has any bearing upon the case. Granting that a trust was well pleaded, it was squarely put in issue by the answer, and on examination of the testimony we find that it completely fails to establish a trust of any character. It certainly cannot be contended that the mere purchase of stock in a corporation creates a trust between the corporation and the purchaser. Nor can a temporary supervision of the work of a corporation by the purchaser establish such a relationship. Moreover the rights of plaintiff under his contract could in no way be affected by any trust existing between defendant and the Wagon Road Company. If the company was indebted to plaintiff at all such indebtedness arose under a contract between them. As we read the record, not a word can be found therein showing that plaintiff ever had any conversation with any officer or representative of the Wagon Road Company respecting the building of the road.

The court properly refused to allow interest on the claim. Interest in this state is a creature of

statute and regulated thereby. It is only recover-able in the absence of contract in the cases enumerated in the statute. *Denver, South Park & Pacific R. R. Co. v. Conaway,* 8 Colo. 1; *Hawley v. Barker,* 5 Colo. 118. The case at bar does not come within the statute as to allowance of interest. The claim was unliquidated.

We find no reversible error in this record, and the judgment will be affirmed.

*Judgment affirmed.*

Decided February 13, A. D. 1912. Rehearing denied April 8, A. D. 1912.